# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| JANICE J. ZECCO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-10319-FDS |
| HESS CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER CERTIFYING A QUESTION OF STATE LAW TO THE SUPREME JUDICIAL COURT OF MASSACHUSETTS

**SAYLOR, J.**

This is a contract dispute concerning the validity and enforceability of an option to purchase land contained in a lease. Jurisdiction is based on diversity of citizenship. The key issue is whether the common-law rule against perpetuities applies to an option to purchase land appurtenant to a commercial lease.

In 1984, the Supreme Judicial Court held that an option in gross—that is, an option that is not annexed to a lease—is subject to the rule against perpetuities. *See Certified Corp. v. GTE Products, Corp.*, 392 Mass. 821, 824-26 (1984). In the same opinion, however, the court noted that an option "viewed as part of the lease . . . might well be outside the scope of the rule against perpetuities." *Id.* at 825 n.5. One Massachusetts trial court has since expressly held that an option appurtenant to a commercial lease is not subject to the common-law rule against perpetuities. *See Exxon Corp. v. McManus*, 7 Mass. L. Rep. 202, 1997 Mass. Super. LEXIS 386, *12-13 (Mass. Super. Ct. Mar. 11, 1997). However, the reasoning from a recent opinion of

the Supreme Judicial Court calls this conclusion into question. *See Bortolotti v. Hayden*, 449 Mass. 193, 200, 204-06 (2007).

Pending before the Court is defendant's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). The underlying facts are largely undisputed. The outcome of the motion will most likely be determined by resolution of a question of state law, for which there is no controlling precedent from the Supreme Judicial Court. It therefore appears prudent to certify the question under the method detailed in Supreme Judicial Court Rule 1:03. *See In re Hundley*, 603 F.3d 95, 97 (1st Cir. 2010). The following statement of facts and discussion of the relevant legal precedents furnish the background and context for the question to be certified.

## I. Background

### A. The Original Lease Term and Options to Extend

Patrick and Janice Zecco entered into a commercial real estate lease with Old Colony Petroleum Company, Inc. on October 17, 1975. (Compl. ¶ 4).[1] The subject matter of the lease was a parcel of land located in Tewksbury, Massachusetts, that was to be used to sell and store gasoline. (*See* Compl., Ex. A ¶¶ 1, 2).

After Patrick Zecco passed away in 2007, plaintiff Janice Zecco succeeded to his interest in the property. (Compl. ¶ 6). She now resides in Northborough, Massachusetts. (Compl. ¶ 2). Defendant Hess Corporation, which has succeeded to Old Colony's interest in the lease, is incorporated in Delaware and has its principal place of business in New York. (Compl. ¶ 5; Answer ¶ 3).

The original term of the lease was for 15 years, beginning on October 17, 1975, and

---

[1] Except where otherwise noted, the underlying facts are not in dispute.

ending on October 17, 1990. (Lease ¶ 3; Countercl. ¶ 23). The lease also granted the lessee four options to extend for successive terms of five years. (Lease ¶ 3). Paragraph 3 of the lease governs the method by which an extension could be completed. In its entirety, paragraph 3 provides:

> Lessee shall have four (4) separate and individual options to extend this lease for four additional terms of five (5) years each on the same terms and conditions as during the original term except that the rental shall be reduced to One thousand two hundred fifty ($1,250.00) dollars per month during the option periods by giving Lessor at least ninety (90) days written notice of such extension prior to the expiration of the original or any extended form as the case may be, provided that if Lessor does not notify Lessee in writing not more than one hundred fifty (150) days nor less than one hundred twenty (120) days prior to the expiration of the then current term, excepting the fourth extended term of this lease, if any, that unless extended the then current term will expire at the end of such then current term, such then current term shall be extended automatically without any prerequisite act of either or both of the parties for the next succeeding extended term on the same terms and conditions as during the original term, including the aforementioned automatic extension provision, except that Lessee then shall have the right at its sole option to terminate this lease during any such automatically extended term on one hundred eighty (180) days prior written notice to Lessor.

(Lease ¶ 3).

The parties agree that this section provides for extension of the lease when the lessee furnishes the lessor with written notice at least ninety days before the date of expiration. (Compl. ¶ 8; Answer ¶ 8; Countercl. ¶ 24; Reply to Countercl. ¶ 24). Hess and its lessee predecessors provided written notices of extension of the lease on May 9, 1990; June 20, 1995; May 15, 2000; and May 18, 2005, in each case more than ninety days before the lease was set to expire. (Countercl. ¶ 25). The Zeccos received each notice, but Mrs. Zecco maintains that neither she nor Mr. Zecco acknowledged to Hess receipt of the May 2005 notice of extension. (Reply to Countercl. ¶ 25). She acknowledges that either she or Mr. Zecco signed and returned Hess's

3

written notices of extension for each of the first three terms. (Pl.'s Opp. at 13).

Mrs. Zecco contends that, under paragraph 3 of the lease, furnishing written notice was not the exclusive method for extending the lease. (Reply to Countercl. ¶ 24). The parties do not dispute that paragraph 3 contemplates an alternative method of extension, whereby the lease could automatically extend when the lessor does not provide timely notice of impending expiration of the lease. The Zeccos never notified Hess or its predecessor lessees in writing that the lease term would soon expire. (Pl.'s Opp. at 13-14).

Also at issue is paragraph 5 of the lease, which governs holdover tenancies. It provides in its entirety:

> Should Lessee hold over the leased premises after the expiration of the original term hereof or of any extended term, whether extended by notice or automatically pursuant to the provisions of Paragraph 3 hereof, such holding over shall not be considered as a renewal or extension of this lease for a longer period than one (1) month unless the parties hereto have extended this lease under such circumstances by written agreement.

(Lease ¶ 5). The parties dispute whether this provision is applicable.

The parties do not appear to dispute that Hess and its predecessor lessees made all rent payments due during the original lease term and the four extended terms. If the lease was validly extended for the fourth term, it remained in effect until October 17, 2010. (Countercl. ¶ 28).

### B. The Option to Purchase

The lease also contained an option for the lessee to purchase the property. Paragraph 19 of the lease, which details the terms of the option, provides in relevant part:

> In consideration of the execution of this lease and rentals to be paid hereunder, Lessor hereby gives Lessee, its successors and assigns, an option to purchase the entire premises herein leased at any time after the original term of this lease for the sum of One Hundred Ninety-Five Thousand Dollars ($195,000).

(Lease ¶ 19). The remainder of the paragraph details the method by which Hess must give written notice to Mrs. Zecco that it wishes to exercise the purchase option and the method by which she must convey title to Hess. (*Id.*). It also lists four conditions precedent to Hess's obligation to purchase the property after it exercises the option. (*Id.*).

On December 22, 2009, Hess sent a letter to Mrs. Zecco indicating its intention to exercise the purchase option. (Countercl. ¶ 30; Reply to Countercl. ¶ 30). She responded with a letter on January 14, 2010, stating the she refused to sell the property and asserting that the purchase option was void and unenforceable. (Countercl. ¶ 31). Hess then sent a letter to Mrs. Zecco on February 15 stating the grounds on which it contends that the option is valid and enforceable. (*Id.* ¶ 33). By separate letter, it scheduled a closing date of February 18 for the sale and informed Mrs. Zecco of its intention to move forward with the closing despite her refusal to sell. (*Id.* ¶¶ 32, 33). On February 17, Mrs. Zecco sent a letter advising Hess that she would not comply with the schedule or participate in the closing. (*Id.* ¶ 34). Hess alleges that its attorney was present at the location and at the appointed time for the closing on February 18, but that Mrs. Zecco did not come. (*Id.* ¶¶ 35, 36).

### C.     **Procedural Background**

Mrs. Zecco filed this action in Worcester Superior Court on January 26, 2010. The complaint sought a declaration under Mass. Gen. Laws ch. 231A that the option to purchase was invalid, void, and unenforceable. Hess timely removed the action to this Court under 28 U.S.C. § 1441, invoking diversity jurisdiction under 28 U.S.C. § 1332. Hess then counterclaimed, seeking a declaration that the option to purchase was valid and enforceable and an order of specific performance. Plaintiff's reply to the counterclaims asserted several affirmative defenses. Hess

5

then moved for judgment on the pleadings under Fed. R. Civ. P. 12(c).

**II.     Discussion**

When a question of Massachusetts law may prove determinative in the case at hand and when it appears that there is no controlling precedent from the Commonwealth's highest court, this Court may certify the question to the Supreme Judicial Court. *See* Mass. S.J.C. R. 1:03; *In re Engage, Inc.*, 544 F.3d 50, 52 (1st Cir. 2008). A federal district court may certify a question to the SJC on its own motion, even if neither party has requested certification. *See In re Hundley*, 603 F.3d at 98; *Turner v. City of Boston*, — F. Supp. 2d —, 2011 WL 379410, at * 6 (D. Mass. Feb. 7, 2011). Although the parties have not requested certification here, certification is appropriate under the circumstances because both conditions of SJC's Rule 1:03 have clearly been satisfied. As will be further explained, the state law question will likely be determinative, and there is no clear controlling precedent from the SJC. Moreover, this case presents a question of state common law that is best left to the judgment of the state courts. Rather than attempt to forecast how the SJC might resolve the question, the most prudent course, and the path that best promotes federal-state comity, is certification. *See Globe Newspaper Co. v. Beacon Hill Architectural Comm'n*, 40 F.3d 18, 24 (1st Cir. 1994).

Plaintiff presents two principal arguments for the proposition that defendant's purchase option is not enforceable. First, plaintiff contends that Hess did not properly exercise its fourth option to extend the term of the lease. If this is so, as plaintiff maintains, then defendant is a tenant-at-will, and the option to purchase terminated with the expiration of the lease. *See O'Brien v. Hurley*, 325 Mass. 249, 251 (1950). Second, plaintiff contends that even if Hess properly extended the term of the lease, the option to purchase is unenforceable because it

6

violates the common-law rule against perpetuities. Because it appears to this Court that the first contention is without merit, the outcome of the case will likely be determined by resolution of plaintiff's second contention.[2]

### A. Whether the Parties Validly Extended the Lease

A lessee who possesses an option to purchase may exercise that option at any time while the lease is in effect. *See Atlantic Richfield Co. v. Couture*, 4 Mass. App. Ct. 230, 234 (Mass. App. Ct. 1976) (noting that an option to purchase "could have been exercised at any time prior to a termination of the lease"); *Slater v. Easter*, 3 Mass. App. Ct. 757, 757 (Mass. App. Ct. 1975) (holding that a purchase option "could be exercised at any time while the lease was in effect"). But where a lease has expired, the general rule is that an inseparable option to purchase contained in the lease also expires. *See O'Brien*, 325 Mass. at 251 (unless "the lease had been extended, . . . the option to purchase was not validly exercised"); *London v. Tebo*, 246 Mass. 360, 362 (1923) ("It would follow that if the leasehold had been ended . . . the contract had expired, and the right to purchase fell with it."); *Ober v. Brooks*, 162 Mass. 102, 104 (1894).

Plaintiff contends that the lease was not validly extended for a fourth term and that Hess has been a tenant-at-will since expiration of the third extended term. If this is so, the lease is no longer in effect, and the option to purchase has terminated. *See O'Brien*, 325 Mass. at 251. In

---

[2] Plaintiff offers three other arguments as to why the purchase option is unenforceable. First, plaintiff contends that the purchase option was not supported by valid consideration because it was not supported by consideration independent of the consideration for the lease. This argument has been rejected by the Supreme Judicial Court. *See, e.g.*, *Shayeb v. Holland*, 321 Mass. 429, 432 (1947) (noting that an option to purchase contained in a commercial lease was "supported by the underlying consideration of the lease"); *see also* 5A Mass. Practice § 17:101 ("where the lease and option constitute a single contract, the consideration for the lease supports the option"). Plaintiff's second and third contentions involve the reasonableness of the fixed purchase price and the duration of the option, as well as the reasonableness of the restraint on the alienation of property. Because these concerns will be largely be addressed by resolution of the question of whether the option is subject to the rule against perpetuities, the Court will not consider them now.

support of this position, plaintiff contends that paragraph 3 of the lease provides for two methods by which defendant could have exercised its extension option: (1) by providing written notice at least ninety days before expiration, or (2) through an automatic extension when the lessor fails to give notice of impending expiration. While admitting that defendant provided timely written notice in its May 2005 letter, plaintiff contends that the lease was also automatically extended provisionally through her own failure to notify defendant of the impending expiration. (Pl.'s Opp. at 14 ("[T]he Lease was extended both by Hess' written notice and automatically by [her own] failure to notify Hess of the termination of the Lease.")).

Building off the theory that the lease was extended provisionally for a fourth term by automatic extension, plaintiff then invokes paragraph 5 of the lease. She maintains that paragraph 5 requires a written agreement executed by the parties whenever a lease term is extended automatically. Plaintiff contends that for the first three term extensions, her written acknowledgment of defendant's notice of extension constituted a written agreement, but that no written agreement existed when she did not reply to defendant's fourth notice of extension. She therefore contends that the lease expired at the end of the third term, and that the option to purchase expired with it.

Massachusetts law is clear that "an option to extend for a definite period of time requires no further act by the parties so long as the lessee complies with the terms of the option to extend the lease." *Anderson v. Lissandri*, 19 Mass. App. Ct. 191, 194-95 (Mass. App. Ct. 1985) (citing *Mutual Paper Co. v. Hoague-Sprague Corp.*, 297 Mass. 294, 299 (1937)). Unlike an option for renewal, which implies "the giving of a new lease upon the same terms as the old lease, . . . an option for extension contemplates a continuance of the old lease for a further period." *Mister*

*Donut of America, Inc. v. Kemp*, 368 Mass. 220, 223 (1975) (quoting *Mutual Paper Co.*, 297 Mass. at 299). As long as Hess complied with the terms of the option to extend in the lease, the original lease remained in effect with all of its terms and conditions, including the purchase option.

The parties do not dispute that Hess complied with the terms of the option to extend. Indeed, plaintiff has admitted that the lease provides for four term extensions upon ninety days' written notice by the lessee. (Reply to Countercl. ¶ 24). Nor does she dispute that Hess did provide written notice at least ninety days prior to expiration of the third term of extension. (*Id.* ¶ 25). Plaintiff's argument hinges upon the theory that this method of extension was not exclusive, and that a provisional extension was also accomplished automatically, but ultimately failed due to the absence of a written agreement.

This theory is incorrect as a matter of law. First, plaintiff has already admitted that defendant complied with the terms of the option to extend the lease for the fourth term by providing ninety days' written notice. If this is so, then the fourth extension option was validly exercised, and the option to purchase was not terminated. *See Mutual Paper Co.*, 297 Mass. at 299. Whether there was an alternative method of extension is of no consequence as long as the lease was properly extended under the terms of the option. The automatic extension method exists to protect the lessee when the lessor fails to notify the lessee of upcoming expiration, but plaintiff's theory would transform it into a requirement that the parties enter into a new written agreement. Such a position improperly converts the extension option into a renewal option, and is at odds with the plain text of the lease. *See Mister Donut of America, Inc.*, 368 Mass. at 223.

Moreover, the text of paragraph 5 makes clear that it applies only *after* expiration of the lease. By its terms, paragraph 5 operates "[s]hould Lessee hold over the leased premises after the

9

expiration of the original term hereof or of any extended term." (Lease ¶ 5). Thus, paragraph 5 applies in the event that the lessee remains on the property as a holdover tenant after the lease has expired.[3] Because defendant complied with the terms of the option to extend, however, the lease never expired and defendant was never a holdover tenant. Accordingly, paragraph 5 is not relevant to the analysis, and a written agreement was never a prerequisite to accomplishing a valid extension of the lease.

Because it appears to the Court that defendant's extension option was validly exercised for the fourth term, defendant's purchase option was not terminated. Whether the purchase option is valid and enforceable will therefore turn on whether it is subject to the common-law rule against perpetuities.

### B. Whether the Common-Law Rule Against Perpetuities Applies to a Purchase Option Appurtenant to a Commercial Lease

Under the Massachusetts common-law rule against perpetuities, "a contingent future interest is void unless 'it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.'" *Certified Corp.*, 392 Mass. at 823 (citing J.C. GRAY, RULE AGAINST PERPETUITIES § 201, at 191 (4th ed. 1942)); *see also Eastman Marble Co. v. Vermont Marble Co.*, 236 Mass. 138, 152 (1920).[4] Absent a provision for the option to be "limited by a

---

[3] A holdover tenant is one "who remains in possession of real property after a previous tenancy (esp. one under a lease) expires, thus giving rise to a tenancy at sufferance." BLACK'S LAW DICTIONARY 1605 (9th ed. 2009); *accord Cabot v. Cabot*, 66 Mass. App. Ct. 1119 (Table), *3 (Mass. App. Ct. 2006) ("A tenant who holds over after the end of a written lease is a tenant at sufferance."). If, during the holdover period, the lessor accepts rent payments from the lessee, the tenancy at sufferance can convert into a tenancy at will. *See Staples v. Collins*, 321 Mass. 449, 451 (1947); *Warren v. Lyons*, 152 Mass. 310, 314-15 (1890). Plaintiff contends that defendant was a tenant-at-will because she accepted defendant's rent payment after (she alleges) the lease expired.

[4] The common-law rule against perpetuities was replaced by the Uniform Statutory Rule Against Perpetuities, Mass. Gen. Laws ch. 184A, enacted in 1989 and effective as of June 30, 1990. The statutory rule applies prospectively only. *See Bortolotti*, 449 Mass. at 199. Because the option in this case was conferred before 1990, the Uniform Statutory Rule Against Perpetuities is inapplicable, and the Court must only look to the

life in being at the time of its creation, the period allowed by the rule . . . is twenty-one years commencing from the time the right was conferred." *Bortolotti*, 449 Mass. at 200. The purpose of the rule is to invalidate contingent future interests that vest too remotely, unduly restrain alienation of land, or render real estate unmarketable for an unreasonable period of time. *See id.* at 201; *Certified Corp.*, 392 Mass. at 825; *Roberts v. Jones*, 307 Mass. 504, 507-08 (1940).

There is no dispute that the option to purchase in this case could vest more than 21 years after its creation, and that no provision measures the option against a life in being at the time of execution. The parties entered into the lease in 1970, and the option could be exercised "at any time after the original term of this lease." (Lease ¶ 19). That is, the lease established a fixed time period, 15 to 35 years after execution of the contract, within which the option could be accepted if the lease was extended. The parties agree that defendant sought to exercise the option 35 years after its creation. It therefore follows that if the purchase option contained in the lease is subject to the rule against perpetuities, it is void and unenforceable.

In *Certified Corp. v. GTE Products Corp.*, the SJC held that a purchase option that is apart from the lease or another document, referred to as an option in gross, is subject to the rule against perpetuities. *See* 392 Mass. at 824-26. The option at issue in that case was executed contemporaneously with the lease, but was physically separate from the lease. *Id.* at 822 n.2. Because the absolute right to purchase imposed a 25-year restriction upon the alienation of land, the court determined that it was void under the common-law rule against perpetuities. *Id.* at 825-26. In a footnote, the court distinguished between its holding, which concerned options in gross, and the law concerning options appurtenant. *Id.* at 825 n.5. Without further analysis, it observed,

---

common-law rule. *See Exxon Corp.*, 1997 Mass. Super. LEXIS 386, at *6 n.5.

"If the option is viewed as part of a lease, it might well be outside the scope of the rule against perpetuities." *Id.*

Most subsequent cases have not embraced the potential distinction identified in *Certified* between options in gross and options appurtenant. Instead, Massachusetts courts have simply asserted that "an option to purchase real estate at a fixed price falls within the common law rule against perpetuities." *Bortolotti*, 449 Mass. at 200 (citing *Certified Corp.*, 392 Mass. at 825-26; *Eastman Marble Co.*, 236 Mass. at 152-53; *Winsor v. Mills*, 157 Mass. 362, 366 (1892)). *See also Peterson v. Tremain*, 35 Mass. App. Ct. 422, 423 (Mass. App. Ct. 1993) ("An option to purchase land creates an equitable property interest subject to the rule against perpetuities."); *English v. Longo*, 2008 WL 597615, at *3 (Mass. Land Ct. Mar. 6, 2008) ("Case law consistently describes an option to purchase property as an equitable property interest subject to the rule against perpetuities." (citations omitted)); *Brighton Park Assocs., LLC v. City of Boston*, 2008 WL 383442, at *2-3 (Mass. Land Ct. Feb. 18, 2008) (relying on *Bortolotti* in its holding that a fixed-price purchase option contained in a deed is subject to the rule against perpetuities). *But see Thomas v. Kiendzior*, 27 Mass. App. Ct. 370, 371 (Mass. App. Ct. 1989) ("In Massachusetts options to purchase real estate are (at least if not part of a lease) subject to the rule against perpetuities.").[5] One court has emphasized the ambivalence of the *Certified* footnote, noting that the decision "only mentions that the Rule Against Perpetuities 'might' not apply to an option that was a part of a lease." *English*, 2008 WL 597615, at *5 (quoting *Certified Corp.*, 392 Mass. at

---

[5] At least one opinion from the SJC appears to enforce an option to purchase land contained within a commercial lease 25 years after it was conferred. *Amerada Hess Corp. v. Garabedian*, 416 Mass. 149, 156 (1993). In that case no argument was made regarding the applicability of the rule against perpetuities. Unlike the lease in this case, which was extended for several terms, the lease in *Garabedian* was renewed. *Id.* at 154.

825 n.5).

The exception to this pattern, and the case upon which defendant relies, is *Exxon Corp. v. McManus*, authored by then-Judge Botsford. *See* 1997 Mass. Super. LEXIS 386, *12-13 (Mass. Super. Ct. Mar. 11, 1997). While acknowledging that "the issue appears somewhat open in Massachusetts," the court concluded that the rule against perpetuities does not apply to purchase options appurtenant to commercial leases. *Id.* at *11. The court reasoned that the common-law rule against perpetuities was designed to encourage the free transfer of land, which was often stymied in the intra-family context when past generations restricted the right of future generations to alienate property. *Id.* at *10. In the commercial context, however, the court saw less justification for concern over restraints on alienation of land contained within leases. *See id.* Because a commercial holder of a purchase option has an incentive to develop the land, the existence of the option might actually enhance the future marketability of the property. *Id.* at *8, *9 ("[O]ptions appurtenant provide an incentive for the tenant to develop the property since there is an opportunity to own it in the future."). Indeed, the facts of *Exxon* bore out that reasoning: the commercial holder of the option had substantially improved the condition of the land over the course of its 25-year tenancy. *Id.*[6] The court therefore concluded that even though the purchase option contained in the lease had vested 25 years after its creation, it was not void under the common-law rule against perpetuities. *Id.* at *12-13.[7]

The reasoning of the SJC in *Bortolotti v. Hayden*, decided in 2007, casts some doubt on

---

[6] There is no evidence in the record in the case at hand as to whether defendant improved the condition or marketability of the land during its tenancy.

[7] The *Exxon* court also conducted a thorough survey of the practice under English common law and within other jurisdictions in the United States, as well as a review of relevant secondary sources, before coming to this conclusion. *See* 1997 Mass. Super. LEXIS 386, at *8-11.

13

this conclusion. *See* 449 Mass. at 200-05. In that case, the court considered whether a right of first refusal contained in a commercial lease is subject to the common-law rule against perpetuities. *Id.* at 198. It concluded that it is not. *Id.* at 205. The court structured its analysis of the question by distinguishing between rights of first refusal and options to purchase real estate at a fixed price. *See id.* at 200-02. Two primary differences emerged, involving restraints on money and time. *See id.* at 201-02. First, unlike a fixed-price option to purchase, a right of first refusal does not restrict the property owner's ability to obtain the fair market value price from a bona fide offeror. *See id.* While the holder of a purchase option can "compel an owner to sell the property at an unfavorable price," the holder of a right of first refusal is only entitled to buy at the price offered by a third party. *Id.* at 202. Second, the holder of a right of first refusal cannot compel the property owner to sell at any time; a property owner need only disclose third-party offers to the holder of a right of first refusal, but retains the prerogative of deciding whether or not to sell. *See id.* at 201-02. By contrast, the holder of a purchase option can "encumber an owner's ability to sell the property for a lengthy period of time." *Id.* at 202.

These considerations led the court to conclude that the rule against perpetuities should not apply to rights of first refusal. *Id.* In drawing comparisons between how these considerations affected rights of first refusal and purchase options, however, the court did not distinguish between purchase options in gross or appurtenant. Nor would its analysis have been altered by the distinction. A fixed-price option to purchase contained within the lease restricts a land owner's ability to obtain a fair market price as much as an option in gross; likewise, a purchase option appurtenant to a commercial lease encumbers an owner's freedom to choose when to sell as much as an option in gross. The SJC's reliance on these considerations therefore suggests that

14

a purchase option contained within a commercial lease should not be treated differently from a purchase option separate from the lease. If this is so, then the rule adopted in *Certified*—namely, that purchase options in gross are within the scope of the common-law rule against perpetuities—would seemingly apply with as much force to purchase options appurtenant to commercial leases.

Because the SJC's observation in the *Certified* footnote and its reasoning in *Bortolotti* seemingly point in opposite directions, there does not appear to be controlling precedent from the Supreme Judicial Court to guide this Court's analysis. Under the circumstances, the Court cannot confidently predict how the SJC would answer the question of whether purchase options contained in commercial leases are subject to the common-law rule against perpetuities. Furthermore, resolution of this question of state law will likely be determinative in this case. If purchase options in commercial leases are within the scope of the rule against perpetuities, the option in this case is likely void and unenforceable. Conversely, if appurtenant options are outside the scope of the rule, the option is likely valid, and this Court should order specific performance. For the foregoing reasons, certification is the most prudent course and the path that best preserves the role of state courts in resolving this question of state common law.

**III.     Order**

It is hereby ORDERED that the following question of state law is certified to the Supreme Judicial Court of Massachusetts, pursuant to Supreme Judicial Court Rule 1:03:

> Is an option to purchase land appurtenant to a commercial lease subject to the common-law rule against perpetuities?

15

The Clerk of the Court is directed to forward to the Supreme Judicial Court, under official seal, copies of this Memorandum and Order and the entire record of this case. This case shall be STAYED pending a response to the certified question from the Supreme Judicial Court.

**So Ordered.**

|  |  |
|---|---|
| Dated: March 3, 2011 | /s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge |